UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HARLEY-DAVIDSON MOTOR COMPANY INC,

          Plaintiff,

    v.                                    Case No. 24-cv-1125-bhl

MOD JEWELRY GROUP INC, LEN WEISS and
STEEL HORSE JEWELRY INC,

          Defendants,

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff Harley-Davidson Motor Company Inc. (Harley-Davidson) filed a complaint on September 4, 2024 against Defendants MOD Jewelry Group Inc. (MOD), Steel Horse Jewelry Inc. (Steel Horse), and Len Weiss. (ECF No. 1.) Defendants answered on October 21, 2024. (ECF No. 15.) After Defendants' initial counsel withdrew, Weiss indicated he would represent himself, while MOD and Steel Horse failed to secure new representation, had a clerk's default entered against them, and then filed for bankruptcy in the Southern District of Florida. (ECF Nos. 34 & 37.) That bankruptcy case has since been dismissed, and neither MOD nor Steel Horse have further defended themselves in this case. (ECF No. 53.) Weiss also ceased participating in the litigation and, following a hearing and order to show cause, the Court sanctioned him by entering judgment in Harley-Davidson's favor. (ECF No. 46 at 2.) Harley-Davidson now seeks entry of a default judgment against all Defendants. (ECF Nos. 48 & 55.) The Court will grant Harley-Davidson's motions and enter the requested default judgment.

## FACTUAL BACKGROUND

Harley-Davidson manufactures motorcycles and sells a variety of other products, like jewelry, through licensees. (ECF No. 1 ¶¶17.) Harley-Davidson holds multiple trademarks, including HARLEY-DAVIDSON, HARLEY, HD, H-D, HOG, and HARLEY OWNERS GROUP word marks, as well as its Bar & Shield Logo, Number 1 Logo, and Willie G. Skull Logo. (ECF No. 1 ¶¶18, 26.) Harley-Davidson has used these marks for years. (*Id.* ¶¶19–20.)

MOD is a Florida corporation with its principal place of business at 4228 NW 120th Avenue, Coral Springs, Florida.  (*Id.* ¶12.)  Steel Horse is also a Florida corporation with its principal place of business at the same location, 4228 NW 120th Avenue, Coral Springs, Florida.  (*Id.* ¶13.)  Len Weiss is an individual and citizen of Florida.  (*Id.* ¶14.) He is the CEO, Director, and President of MOD, and President of Steel Horse.  (*Id.* ¶¶14, 73.)

Harley-Davidson and MOD first entered a nonexclusive trademark license agreement on January 1, 2011 that has been extended several times.  (*Id.* ¶¶31–33.)  The last iteration of this agreement (the License Agreement) extended the term to December 31, 2023.  (*Id.* ¶34.)  The License Agreement granted MOD the "nonexclusive right, during the Term, to use the Licensed Marks," described above, to produce and sell licensed articles, jewelry and motorcycle bells, to authorized retailers.  (*Id.* ¶¶35–37.) The License Agreement provided that MOD pay either a percentage of its net sales of Licensed Articles or a quarterly minimum payment within 30 days of the end of each quarter.  (*Id.* ¶39.)  Upon expiration, the License Agreement required MOD to cease using any of the Licensed Marks, provide Harley-Davidson a written statement of all finished and work-in-progress Licensed Articles,  promotional materials, and packaging in inventory, and provided MOD a 90-day sell-off period—which would come into effect only if MOD provided its inventory statement to Harley-Davidson within ten days of the License Agreement's expiration.  (*Id.* ¶¶42–45.)  The License Agreement also obligated MOD not to solicit sales to Harley-Davidson dealers for the term of the agreement, and two years thereafter.  (*Id.* ¶46.)

MOD made its last royalty payment, covering the second quarter of 2023, on July 28, 2023.  (*Id.* ¶48.)  On October 18, 2023, Harley-Davidson informed MOD that it would not renew MOD's License Agreement, and that the Agreement would terminate on December 31, 2023.  (*Id.* ¶49.)  Weiss responded on October 18, 2023, indicating MOD would adhere to the timeline.  (*Id.* ¶50.)  But MOD stopped cooperating with Harley-Davidson, did not provide an inventory statement, and did not make any additional royalty payments.  (*Id.* ¶¶51–53.)  MOD then continued to sell Harley-Davidson branded jewelry after December 31, 2023.  (*Id.* ¶54.)[1]

Steel Horse was incorporated in June 2023 and branded as an extension of MOD.  (*Id.* ¶¶63–68 ("We are thrilled to introduce Steel Horse Jewelry by MOD™, a bold new line . . . ").)

---

[1] One of MOD's employees emailed some of Harley-Davidson's apparel dealers and stated that MOD was allowed to sell their remaining stock until the end of June 2024.  (*Id.* ¶55.)  Defendants attended Harley-Davidson's June 2024 apparel and licensing show in Milwaukee and attempted to meet with Harley-Davidson apparel dealers to sell motorcycle-themed jewelry.  (*Id.* ¶57.)

MOD and Steel Horse share a principal address in Florida, facilities in California and Thailand, and a resident agent. (*Id.* ¶¶69–71.) MOD's website (modjewelry.com) redirected to steelhorsejewelry.com. (*Id.* ¶72.) The two companies share employees. (*Id.* ¶74.) Both filed for bankruptcy on September 4, 2025. (ECF No. 37.) And, as stated above, Weiss is the CEO, Director, and President of MOD, and President of Steel Horse. (ECF No. 1 ¶¶14, 73.) Steel Horse also continued to sell motorcycle-themed jewelry with designs very similar to Harley-Davidson's marks, including skulls, shields, and wings. (*Id.* ¶¶58–59.)

## LEGAL STANDARD

"A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012) (quoting *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 602) (7th Cir. 2007)). "Upon default, the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Id.* (citing *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989)).

Under Federal Rule of Civil Procedure 55(b)(2), the Court may enter a judgment by default without a hearing on damages if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

## ANALYSIS

Harley-Davidson alleges that Weiss is an alter ego of both MOD and Steel Horse, that Defendants breached the License Agreement, and that Defendants violated Harley-Davidson's trademark rights under the Lanham Act. The Clerk entered default against MOD and Steel Horse because they could not secure replacement counsel, and the Court entered default against Weiss as a sanction. Defendants have not responded to either of Harley-Davidson's motions for default judgment. Accepting Harley-Davidson's well pleaded allegations as true, the Court concludes that Defendants are alter egos of each other and are all liable for each of Harley-Davidson's applicable claims. Further, Harley-Davidson has supported its request for damages and injunctive relief with detailed affidavits and documentary evidence, and the Court may therefore enter a judgment without a hearing on damages. *Id.* at 1323. The Court will therefore grant Harley-Davidson some of its requested relief.

## I. Harley-Davidson's Well-Pleaded Allegations Establish the Defendants' Liability.

Harley-Davidson raises multiple claims: breach of contract (Count I)[2], trademark counterfeiting under 15 U.S.C. §1114(1) (Count III), trademark infringement under 15 U.S.C. §1114(1) (Count IV), trademark infringement, false designation of origin, and unfair competition under 15 U.S.C. §1125(a)(1)(A) (Count V), trademark dilution under 15 U.S.C. §1125(c) (Count VI), copyright infringement under 17 U.S.C. §101 (Count VII), and common law claims for trademark infringement, unfair competition, and misappropriation (Count VIII). (ECF No. 1.)

### A. Harley-Davidson's Well Pleaded Complaint Establishes Weiss and Steel Horse are Alter-Egos of MOD.

Harley-Davidson's complaint establishes that Weiss is an alter ego of both MOD and Steel Horse, that he used the corporate form for an impermissible purpose, and that Harley-Davidson was injured by that improper use. It is therefore permissible to pierce the corporate veil and hold Weiss liable for MOD and Steel Horse's infringing activity.

"The general rule is that a plaintiff's alter ego theory is governed by the law of the state in which the business at issue is organized." *Rual Trade Ltd. v. Viva Trade LLC*, 549 F.Supp.2d 1067, 1077 (E.D. Wis. 2008) (citing Restatement (Second) of Conflict of Laws §307 (regarding corporations); *Gann v. William Timblin Transit, Inc.*, 522 F.Supp.2d 1021, 1030 (N.D. Ill. 2007)). To pierce the corporate veil of a Florida corporation on an alter ego theory, a plaintiff must show that: "(1) the *shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the *shareholders* were in fact alter egos of the corporation; (2) the corporate form [was] used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *Molinos Valle Del Cibao, C. por. A v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (citing *Gasparini v. Prodomingo*, 972 So.2d 1053, 1055 (Fla. Dist. Ct. App. 2008)).

Harley-Davidson asserts that its allegations, and the evidence it has been able to gather through its limited opportunity to take discovery, "demonstrate that the alter ego doctrine applies here" and that Weiss can be held liable for MOD and Steel Horse's liabilities. (ECF No. 49-1 at 12.) The Court agrees. Harley-Davidson has pled that Weiss was effectively indistinguishable from MOD and Steel Horse because he blurred corporate lines and ignored corporate formalities.

---

[2] Harley-Davidson also raises a tortious interference with contract claim (Count II), against Steel Horse and Weiss, that is no longer relevant, as the Court finds that Steel Horse and Weiss are both alter egos of MOD.

(ECF No. 1 ¶¶14, 60–76, 117.) Since taking limited discovery, and questioning Weiss in the context of MOD and Steel Horse's bankruptcy proceedings, Harley-Davidson now informs the Court that Weiss also commingled personal and corporate funds of both entities, is the sole shareholder of MOD and Steel Horse, and controls both companies. (ECF No. 50-9 at 13:19–14:5, 20:15–28:14, 28:25–29:8, 34:5–36:24; 38:3–6.) As to the second and third prongs of the test, Harley-Davidson alleges that Weiss has used Steel Horse for the improper purpose of evading contractual obligations to Harley-Davidson and continuing to sell motorcycle-themed jewelry when MOD could no longer do so and to hide assets that Harley-Davidson could otherwise have recovered from MOD. (ECF No. 1 ¶¶60–76.)

**B. Harley-Davidson's Well Pleaded Complaint Establishes Defendants' Liability for Breach of Contract.**

Harley-Davidson alleges that MOD, and by extension, all Defendants, breached the License Agreement in multiple ways: by failing to pay royalties owed under the agreement, by failing to provide a required inventory statement, and by continuing to use the Harley-Davidson marks after the License Agreement expired on December 31, 2023. (ECF No. 1 ¶¶52–54; ECF No. 49-1 at 15–16.)

A plaintiff establishes breach of contract by showing that (1) a contract existed between plaintiff and defendant (2) a breach of that contract, and (3) damages. *Pagoudis v. Keidl*, 988 N.W.2d 606, 612 (Wis. 2023). Here, Harley-Davidson alleges that Harley-Davidson and MOD entered into a License Agreement that was in force through December 31, 2023. (ECF No. 1 ¶¶31–46.) It has further alleged that MOD breached the contract when it failed to pay its royalties as required, failed to furnish an inventory statement after the License Agreement expired, and continued to use the marks after the License Agreement expired. (*Id.* ¶¶52–54.) Its lost royalty payments are damages. (*Id.* ¶¶48, 53–54.) Harley-Davidson's well pleaded allegations establish that MOD, and by extension, all Defendants, breached the License Agreement.

**C. Harley-Davidson's Well Pleaded Complaint Establishes Defendants' Liability for Violating the Lanham Act.**

Harley-Davidson alleges that Defendants violated multiple provisions of the Lanham Act by continuing to use Harley-Davidson's marks on MOD's jewelry after the License Agreement expired and by Steel Horse's use of marks that are confusingly similar to Harley-Davidson's. (ECF No. 49-1 at 16–21; ECF No. 1 ¶¶96–145.)

Counts IV and V, for infringement of a registered mark, unfair competition, and false designation of origin share the same "likelihood of confusion" test. *See e.g., Smith Fiberglass Prods., Inc. v. Ameron, Inc.*, 7 F.3d 1327, 1329 (7th Cir. 1993). Harley-Davidson's common law claim for trademark infringement, unfair competition, and misappropriation, Count VIII, also uses the same test. *Nat'l Football League Properties, Inc. v. ProStyle, Inc.*, 16 F.Supp.2d 1012, 1022 (E.D. Wis. 1998). To prevail, Harley-Davidson must allege that (1) it owns a protectable trademark, and (2) Defendants used the mark in a manner that is likely to cause consumer confusion. *Phoenix Ent. Partners, LLC v. Rumsey,* 829 F.3d 817, 822 (7th Cir. 2016).

Harley-Davidson has alleged facts to establish these elements. First, Harley-Davidson owns numerous federal registrations on the principal register for the Harley-Davidson marks that cover jewelry. (ECF No. 1 ¶¶18, 26.) These are incontestable and constitute conclusive evidence that the Harley-Davidson marks are valid. 15 U.S.C. §§1065, 1115(b). Second, the complaint establishes that MOD's continued sale of Licensed Articles caused a likelihood of confusion. It is well established that when a franchise is terminated, a former franchisee's continued use of the trademark is a violation of trademark law. *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *Dunkin' Donuts Franchised Rests. v. Elkhatib*, No. 09 C 1912, 2009 WL 2192753, at *5 (N.D. Ill. July 17, 2009). The likelihood of confusion exists as a matter of law when a licensee continues to use marks owned by the licensor after the termination of the license. *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F.Supp.2d 914, 922 (C.D. Ill. 2000); *see Gorenstein,* 874 F.2d at 435. Harley-Davidson has also established that Steel Horse's sales of jewelry that resembled the Licensed Articles caused a likelihood of confusion. The marks, as shown in the complaint, are highly similar, and are used on very closely related products, motorcycle-themed jewelry. (ECF No. 1 ¶¶58–59.)

To establish counterfeiting under the Lanham Act (Count III), Harley-Davidson must show the same elements as discussed above *and* that Defendants are using a "counterfeit" of a registered mark. *See Desmond v. Chi. Boxed Beef Distributors, Inc.*, 921 F.Supp.2d 872, 880 (N.D. Ill. 2013). A counterfeit mark is a "spurious designation that is identical with, or substantially indistinguishable from" a registered mark. 15 U.S.C. §1116(d)(1)(B)(ii).

Harley-Davidson's complaint establishes that MOD engaged in counterfeiting because it continued to sell products branded with Harley-Davidson's marks after the License Agreement ended, and those marks would be considered counterfeit marks. (ECF No. 1 ¶54); *see e.g. Century*

*21 Real Est., LLC v. Destiny Real Est. Props.*, No. 4:11-CV-38 JD, 2011 WL 6736060, at *3–5 (N.D. Ind. Dec. 19, 2011) (holding that former franchisee's continued use of licensed mark supported counterfeiting claim); *Century 21 Real Est. LLC v. Bercosa Corp.,* 666 F.Supp.2d 274, 290 (E.D. N.Y. 2009) (holding that use of genuine marks after license expired was use of counterfeit marks). Moreover, MOD agreed through its License Agreement that any Harley-Davidson branded products produced in violation of the License Agreement would "be deemed counterfeit." (ECF No. 50-3 §§4.1(b), 15.) The allegations in the complaint also establish that the conduct was willful.

Harley-Davidson's complaint also establishes that Defendants diluted its trademarks (Count VII). To establish trademark dilution under 15 U.S.C. §1125(c), Harley-Davidson must establish that (1) its marks are famous and distinctive; (2) Defendants is using the marks in commerce; (3) Defendants' use of counterfeits of Harley-Davidson's marks began after the marks became famous; and (4) that Defendants' use of the counterfeit marks is likely to dilute the distinctiveness of the marks and their ability to identify and distinguish Harley-Davidson's goods and services. *See AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 811 (7th Cir. 2002); 15 U.S.C. §1125(c)(1).

First, Harley-Davidson has alleged facts to show its marks are famous, and this Court has previously reached the same conclusion. (ECF No. 1 at ¶¶17–25); *see Harley-Davidson U.S.A., LLC v. SunFrog, LLC*, 311 F.Supp.3d 1000, 1042 (E.D. Wis. 2018) (finding Harley-Davidson, Harley, H-D, HD, and the Bar & Shield logo famous). Second, Defendants used the marks in commerce because they sold goods bearing the marks. Third, Harley-Davidson has shown its marks became famous before 2024, when Defendants sold goods with very similar marks. (ECF No. 1 ¶¶23–30); *see SunFrog,* 311 F.Supp.3d at 1042. Fourth, Harley-Davidson has shown dilution. "Dilution by blurring" is actionable under the Lanham act, 15 U.S.C. §1125(c)(2)(B), and occurs when consumers see the plaintiff's mark on a variety of different goods and services, "raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product," *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000). Harley-Davidson has shown dilution by blurring, as its marks are familiar, and consumers are likely to associate the infringing items with Harley-Davidson. (ECF No. 1 ¶¶17–25); *see Sun Frog, LLC*, 311 F.Supp.3d at 1041–45.

**II.      Harley-Davidson is Entitled to Damages and Injunctive Relief.**

**A.  Harley-Davidson is Entitled to Its Lost Royalties.**

Harley-Davidson seeks lost royalties, interest, and late fees in the amount of $1,178,736, or, *alternatively*, $1,026,259, calculated using the minimum royalty payment option, as damages for the breach of its Licensing Agreement with MOD.  (ECF No. 49-1 at 21.)  Harley-Davidson has supported the minimum royalty payment amount with documents and a detailed affidavit, and the Court will award Harley-Davidson $1,026,259 in damages for its breach of contract claims using the minimum royalty payment calculation.  (ECF No. 50 ¶21.)

**B.  Harley-Davidson is Entitled to Statutory Damages for Counterfeiting.**

Harley-Davidson also seeks statutory damages for counterfeiting based on MOD's use of the various Harley-Davidson marks on products after the License Agreement expired on December 31, 2023, rather than Defendants' profits or its damages for the infringing activity.  (ECF No. 49-1 at 21–24.)   The Lanham Act allows a plaintiff in a case involving use of a counterfeit mark to elect an award of statutory damages instead of actual damages or profits in the amount of "(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. §1117(c).

"The trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party."  *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir. 1985).  Courts may exercise "a great deal of discretion . . . in fashioning a remedy for trademark infringement."  *4SEMO.com Inc., v. S. Ill. Storm Shelters, Inc.*, 939 F.3d 905, 912 (7th Cir. 2019) (quoting *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 917 (Fed. Cir. 1984)).   Courts consider "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future [] infringement."  *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991) (quoting *F.E.L. Publ'ns v. Cath. Bishop of Chi.*, 754 F.2d 216, 219 (7th Cir. 1985)).[3] When infringement is

---

[3] *Chi-Boy* involves statutory damages for copyright infringement, but district courts in the Seventh Circuit often look to copyright cases for guidance on damages under the Lanham Act.  *See, e.g.*, *GS Holistic, LLC. v. MKE Vapor, Inc.*, No. 23-CV-750-JPS-JPS, 2023 WL 8238953, at *6 (E.D. Wis. 2023); *Coach, Inc. v. 3D Designers Inspirations*, 70 F.Supp.3d 942, 947 (C.D. Ill. 2014); *Ent. One UK Ltd. v. 2012 Shiliang*, 384 F.Supp.3d 941, 953 (N.D. Ill. 2019).

willful, the Court may also design the statutory damages award to "penalize the infringer and to deter future violations." *Id.* at 1229–30.

Harley-Davidson requests statutory damages for 17 infringing products offered by MOD. (ECF No. 49-1 at 21–22 (citing ECF No. 50 ¶¶23–28.)  Harley-Davidson organizes the products based on what type of product they are (necklaces, rings, earrings, or bracelets) and asks for statutory damages for each type of good displaying an infringing mark.  (*Id.* at 21–23.)  Harley-Davidson requests an award of $300,000 per mark per type of counterfeit good sold, for a total of $5,100,000 in statutory damages for counterfeiting.  (ECF No. 49-1 at 24 (citing *SunFrog*, 311 F.Supp.3d at 1049 (awarding $300,000 per-counterfeit in statutory damages)).)

The Court finds that Defendants' use of the counterfeit marks was willful.  The Court will award Harley-Davidson its requested relief for a total of $5,100,000 in statutory damages.

## C.  The Court Will Grant Harley-Davidson's Request for Injunctive Relief.

Harley-Davidson requests a permanent injunction against Defendants' use of marks and designs that are identical to, substantially indistinguishable from, or confusing similar to, the Harley-Davidson marks.  (ECF No. 49-1 at 24–25.) Harley-Davidson asks that the Court order Defendants to destroy their inventory of infringing products, and remove Harley-Davidson's marks from all their advertising, promotional, and business materials.  (*Id.* at 25.)  Harley-Davidson also asks that the Court enjoin Defendants from "using skulls, shields, or wings," to keep a "safe distance" away from the marks in the future.  (*Id.* at 24–25.)  The Court will grant the injunction as to Harley-Davidson's actual marks, and items that are confusingly similar to them, but will not entirely bar Defendants from producing any item with "skulls, shields, or wings."

The Lanham Act authorizes the Court to grant permanent injunctive relief in cases of trademark infringement "according to the principles of equity and upon such terms as the court may deem reasonable . . . ." 15 U.S.C. §1116(a). A party seeking a permanent injunction must show (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that a remedy in equity is warranted in light of the balance of hardships; and (4) that the public interest would not be harmed by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  A prevailing plaintiff in trademark infringement cases is afforded "a rebuttable presumption of irreparable harm." 15 U.S.C. §1116(a).

Because Harley-Davidson has established a trademark violation, it is afforded a rebuttable presumption of irreparable injury. By virtue of their defaults, Defendants have not rebutted that presumption. Harley-Davidson has also shown that its remedies at law are inadequate to compensate it for its injury because its damages cannot be proved with reasonable certainty, and absent an injunction, it cannot ensure control of its marks. The balance of hardships also favors Harley-Davidson, and the public interest is served by an injunction prohibiting further infringing behavior. Accordingly, the Court will issue, by separate order, the requested permanent injunction against Defendants, as to Harley-Davidson's actual marks. *See MillerCoors LLC v. Anheuser-Busch Cos.*, 940 F.3d 922 (7th Cir. 2019); Fed. R. Civ. P. 65(d).

As to the "safe distance" Harley-Davidson requests, permanently enjoining Defendants from manufacturing any jewelry with "skulls, shields, or wings" would be overbroad in this instance. The Court will not go so far as to completely bar Defendants from using these elements entirely. In *Serv. Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1124 (7th Cir. 1988), the Seventh Circuit confirmed that it is within the district court's discretion to determine how close to a protected mark a product comes, and if it infringes on that mark. *See also Badger Meter, Inc. v. Grinnel Corp.*, 13 F.3d 1145, 1156 (7th Cir. 1994) (noting that the district court could require the defendant to choose a trade dress that avoided all possibility of confusion, but that it was not required to do so). There are plenty of potential designs that could include skulls, shields, or wings and be extremely unlikely to cause confusion with Harley-Davidson's protected marks.

## III. The Court Will Designate This Case As Exceptional and Award Harley-Davidson Attorney's Fees.

Harley-Davidson asserts that the License Agreement requires that the licensee, Defendants, must "reimburse [Harley-Davidson] for any and all expenses that [it] incurs as a result of such Event of Default, including but not limited to reasonable attorneys' and auditors' fees." (ECF No. 49-1 at 26 (citing ECF No. 50-3 at 48).) It also requests the Court designate this case as an exceptional case and award it attorneys' fees under 15 U.S.C. §1117(a). (*Id.* at 27–29.)

Under the Lanham Act, courts may "in exceptional cases . . . award reasonable attorney's fees to the prevailing party." 15 U.S.C. §1117(a). An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

District courts determine whether a case is exceptional in a "case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

The License Agreement provides that Harley-Davidson may recover its attorneys' fees. Moreover, Defendants' conduct in litigation has been unreasonable. Defendants failed to cooperate during discovery, and once Weiss was unrepresented, he simply failed to respond to Harley-Davidson or the Court.

Harley-Davidson is entitled to recover its attorneys' fees. Harley-Davidson is instructed to submit its petition for attorneys' fees within 21 days, by June 10, 2026. As Harley-Davidson is also entitled to recover costs under the Lanham Act, 15 U.S.C. §1117(a), it is also instructed to submit a bill of costs by June 10, 2026.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Harley-Davidson's motions for default judgment, ECF No. 48 and 55, are **GRANTED, in part**, and **DENIED, in part**. The Court will issue a permanent injunction enjoining Defendants by separate order in compliance with *MillerCoors LLC*, 940 F.3d 922 and Federal Rule of Civil Procedure 65(d). The Clerk of Court is directed to enter judgment in favor of Plaintiff Harley-Davidson., and against Defendants Len Weiss, MOD Jewelry Group Inc., and Steel Horse Jewelry Inc., jointly and severally, in the amount of $6,126,259.

**IT IS FURTHER ORDERED** that Harley-Davidson is instructed to submit its petition for attorneys' fees and bill of costs by June 10, 2026.

Dated at Milwaukee, Wisconsin on May 20, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge